IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


GEORGE MOORE,

        Plaintiff,

     vs.                         Civil Action 2:11-CV-132
                                        Judge Watson
                                        Magistrate Judge King

WARDEN, PICKAWAY CORRECTIONAL
INSTITUTION, *et al.*,

        Defendants.


<u>**REPORT AND RECOMMENDATION**</u>

     Plaintiff, a state inmate proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983,[1] alleging that defendants deprived him of medication and food in violation of his rights under the Eighth Amendment to the United States Constitution. This matter is before the Court on plaintiff's *Request for Temporary Restraining Order*, Doc. No. 33 ("*Plaintiff's Motion*").  For the reasons that follow, it is **RECOMMENDED** that *Plaintiff's Motion* be **DENIED**.

**I.    BACKGROUND**

     Plaintiff, currently incarcerated at Pickaway Correctional Institution ("PCI"), alleges that he is medically and physically handicapped.  *Amended Complaint*, Doc. No. 9.[2]  Plaintiff specifically alleges that he suffers from various types of cancer and degenerative

---

    [1]Although plaintiff filed this action on a form habeas corpus petition under 28 U.S.C. § 2254, Doc. No. 1, the Court construed the action as being brought pursuant to Section 1983.  *Order of Transfer*, Doc. No. 2.

    [2]The *Amended Complaint* is verified.

bone disease and that he suffered strokes in 2006 and in 2009 and a heart attack in 2010. *Id*. at ¶¶ B, C. As a result, plaintiff "has very limited mobility and is wheelchair bound (has been for several years)." *Id*.

In May 2010, plaintiff requested that his medications be renewed, but was advised that a Dr. Enzeke had cancelled all of plaintiff's medications. *Id*. at ¶ E. On May 29, 2010, plaintiff was transported, unconscious, to The Ohio State University ("OSU") emergency room. *Id*. Plaintiff awoke to "terrible pain" and bruising in his extremities, which he alleges "was caused by pinching to make me respond." *Id*. His chest and nipples were bruised as well, allegedly because of "Dutch Rubs." *Id*.

During plaintiff's stay at the hospital in May 2010, procedures involving a heart stent and catheter caused him to contract cellulitis; contrary to OSU hospital policy, however, he did not receive treatment for the infection until he "was discharged to the Corrections Medical Center." *Id*. In addition, plaintiff alleges, Dr. Enzeke advised an OSU physician that plaintiff "was old and senile and had forgotten to take the medication" previously prescribed to him. *Id*.

On August 30, 2010, Dr. Awan prescribed two types of medication for plaintiff: Ultram for back pain associated with plaintiff's degenerative bone disease and Nitroglycerine because of plaintiff's cardiac condition. *Id*. at ¶ D. On September 8, 2010, "the [PCI] nurse refused to give" plaintiff his medicine because "there was no prescriptions." *Id*. After again requesting and being denied the medication, plaintiff saw the head nurse who gave plaintiff the

Nitroglycerine "but stated the Ultram would have to be picked up at the pill window.  When pill time came the pill nurse again refused the medication." *Id*.  A dispute arose and, once the medical record was verified, plaintiff "was placed in the hospital but was given commissary restriction for cursing the nurse." *Id*.  Plaintiff alleges that he was denied these two medications from September 8 through September 16, 2010.  *Id*.

On January 7, 2011, plaintiff alleges, PCI Sergeant Justice "took my ID badge as punishment for a minor infraction because he knew I would not be able to obtain meals" without the badge.  *Id*.  After plaintiff filed an informal complaint about this incident, he alleges, "I was set up by a cohort of Sgt. Justice's on a phony drug charge[.]" *Id*.  Following a hearing before the Rules Infraction Board ("RIB"), plaintiff was found guilty of possession and sale of Ultram.  *Id*.  His prescription for Ultram was discontinued.  *Id*.

On February 7, 2011, plaintiff filed the original *Complaint*, naming as defendants PCI Warden Cook and Ernie Moore, Director of the Ohio Department of Rehabilitation and Corrections ("ODRC").  Doc. No. 1.[3]  On April 19, 2011, prior to any response to the original *Complaint*, plaintiff filed the *Amended Complaint* which alleges that defendants knowingly deprived him of medicine and food in violation of his rights under the Eighth Amendment.  Plaintiff seeks injunctive and monetary relief.  *Amended Complaint*, p. 6.

*Plaintiff's Motion* alleges:

---

[3]Plaintiff originally filed this action in the Western Division of this district.  *Id*.  The case was transferred to this Court on February 14, 2011. *Order of Transfer*, Doc. No. 2.

3

> Violations of witholding [sic] medicine for punitive cause
> continues at the whim of whoever wants to do while
> Administrative Staff who do not order the persons to withold
> [sic] the medicine conviently [sic] looks the other way and
> allows this unlawful behavior of officer and medical staff
> thereby condoning the fact.

*Id.* at 1.  Plaintiff further alleges that he "is not a cripple because

of his medical condition the plaintiff is a cripple because the

Department of Corrections has 'made' him a cripple and continues to

use his medical condition as a means to punish him."  *Id.*  Plaintiff

seeks an order compelling defendant PCI Warden Cook "to institute

command of officers and medical staff of Pickaway Correctional

Institution and forbid officers and medical staff from interfearing

[sic] with the dispensing of medical care lawfully prescribed by a

medical doctor[.]"  *Id.* at 1-2.  Defendants oppose *Plaintiff's Motion.*

*Defendants' Response in Opposition to Plaintiff's Motion for a*

*Temporary Restraining Order ("TRO")*, Doc. No. 35 ("*Memo. in Opp.*").

With the filing of plaintiff's reply memorandum, *Reply Memorandum in*

*Support of Request for TRO*, Doc. No. 39 ("*Reply*"), this matter is now

ripe for resolution.[4]


**II.  STANDARD**

Rule 65 of the Federal Rules of Civil Procedure permits a party

to seek injunctive relief if he believes that he will suffer

irreparable harm or injury without such relief.  Fed. R. Civ. P. 65(a)

and (b).  A temporary restraining order relates only to restraints

---

[4]Because this motion can be resolved on the parties' filings, there is
no need for an evidentiary hearing.  *See Potter v. Havlicek*, No. 3:06-cv-211,
2007 U.S. Dist. LEXIS 10677, at *10 (S.D. Ohio Feb. 14, 2007) ("A hearing is
not always necessary on a motion for a preliminary injunction.") (citing,
*inter alia*, 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure, § 2949).

sought without written or oral notice to the adverse party or his attorney, whereas the application is properly treated as one for a preliminary injunction where the adverse party has been given notice. *Id.*; *Rios v. Blackwell*, 345 F. Supp.2d 833, 835 (N.D. Ohio 2004) ("As long as there is notice to the other side and an opportunity to be heard, the standard for a preliminary injunction is the same as that for a temporary restraining order.").

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commer. Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (internal quotation marks omitted)). The decision whether or not to grant a request for interim injunctive relief falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). An injunction, however, is an extraordinary remedy that should be granted only after the Court has considered the following four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citing *McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*)) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)). These four considerations

need not all be met but are rather factors to be balanced. *In re DeLorean Motor Co.*, 755 F.2d at 1229; *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001). "Moreover, a district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). Finally, the movant bears the burden of establishing that "the circumstances clearly demand" this extraordinary remedy. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

## III. DISCUSSION

Plaintiff has named as defendants only PCI Warden Cook and ODRC Director Moore, but he has not indicated whether he is suing them in their official or individual capacities. *See generally Amended Complaint*. However, construing plaintiff's *Amended Complaint* liberally, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), the Court will presume that plaintiff is suing defendants in both their individual and official capacities.

Plaintiff has not demonstrated a likelihood of success on the merits as to the claims against defendants in their individual capacities. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (internal quotation marks omitted)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or

6

knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (internal quotation marks omitted)).  Thus, liability on the part of a supervisor must be based on "active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 554 (6th Cir. 2002) (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).  Here, plaintiff does not allege that defendants PCI Warden Cook and ODRC Director Moore personally withheld medication and/or food from plaintiff.  Instead, plaintiff complains that it was unidentified "employees of PCI," "Officer Jacko," "Officer Bryum," "Nurse Cindy," "[t]he Governor of the State of Ohio," unidentified "officers and medical personell [sic]" and an unidentified nurse who withheld medication and/or food in the past. *See Plaintiff's Motion; Reply*, pp. 1-2, 4; *Amended Complaint*, ¶ D.  These allegations, devoid of any factual support or even a suggestion that the named defendants personally withheld medicine or food – or authorized the withholding of medicine or food from plaintiff – are insufficient to establish the necessary active unconstitutional behavior. *See Combs*, 315 F.3d at 554.

As to the official capacity claims against the named defendants, such claims are the equivalent of claims brought against a governmental entity itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a governmental entity cannot be held liable under

7

§ 1983 on a theory of *respondeat superior* simply because its employees may have engaged in unconstitutional conduct. *Id.* at 691. Rather, a plaintiff seeking to prevail in a § 1983 suit against a governmental entity must first prove, of course, that a constitutional violation actually occurred, and then prove that it was a policy or custom of the governmental entity that was the "moving force" behind the constitutional violation. *Id.* at 694. Such a policy or custom may consist of: "(1) the [governmental entity's] legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance of or acquiescence in federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The allegations in the verified *Amended Complaint* relate only to a handful of instances involving only plaintiff. Under these circumstances, plaintiff has not identified or alleged any unconstitutional policy or custom on the part of either the ODRC or the State of Ohio. Based on the present record, plaintiff has not shown a likelihood of success on the merits as to his official capacity claims. *Id.*

Similarly, plaintiff has not demonstrated irreparable harm. To establish irreparable harm, plaintiff must show that unless his motion is granted, he "will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Here, as defendants point out, *Plaintiff's Motion* contains no factual averments and does not even reference the factors that must be considered by the Court in issuing

8

extraordinary injunctive relief, including irreparable injury.[5] The *Reply*[6] simply alleges that "Officer Jacko and Nurse Cindy have upon several incidents since the filing of Case No. 2:11cv132 stopped the 8-1 pill line which denied medication for serious medical need to plaintiff, they are not the only ones to have done this." *Reply*, p. 1. Plaintiff further contends that "Officer Bryum (Frazier Hosp) has caused plaintiff to miss meals to obtain medication since the filing [of this litigation]." *Id*. Likewise, the *Amended Complaint* simply refers to alleged misconduct by an unidentified nurse and a "Sgt. Justice." *Amended Complaint*, ¶ D. Taken together, plaintiff simply complains of occasional, past incidents in which persons who are not parties to the action allegedly failed to provide medication or food to plaintiff. Plaintiff makes no specific allegation, nor does he provide evidence, that defendants themselves will engage in unconstitutional behavior in the future. Plaintiff has therefore failed to establish harm that is "actual and imminent." Stated differently, any suggestion that defendants PCI Warden Cook and ODRC Director Moore might either personally withhold prescribed medication or food, or authorize such misconduct, in the future is simply speculative.[7] As discussed *supra*, such speculation is insufficient to

---

[5]To the extent that plaintiff argues, without factual support, that ODRC "'made' him a cripple," *Plaintiff's Motion*, p. 1, this allegation is undermined by the verified *Amended Complaint*, which avers that plaintiff has been wheelchair bound for several years as a result of his degenerative bone disease and heart attack in 2010. *Amended Complaint*, ¶¶ B, C, D.

[6]Plaintiff provides no evidentiary support for his allegations in the *Reply*, but the Court will nevertheless assume, for purposes of this discussion, that they are true.

[7]To the extent that plaintiff may suggest that the medication Ultram will be withheld from him in the future, the Court is not persuaded that such withholding warrants injunctive relief. First, not only is there no evidence that the named defendants would either actually or by authorization withhold

warrant extraordinary injunctive relief.  *See Abney*, 443 F.3d at 552.

In light of the Court's decision as to these factors, the Court need not consider whether the remaining factors support a request for injunctive relief.  *See Jones*, 341 F.3d at 476.  Based on the present record, plaintiff has not met the high standard necessary for extraordinary injunctive relief.  It is therefore **RECOMMENDED** that plaintiff's *Request for Temporary Restraining Order*, Doc. No. 33, be **DENIED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

such medication, plaintiff concedes that, since his RIB hearing, he no longer has a prescription for that medication.  *See Amended Complaint*, ¶ D.  Second, although plaintiff may now disagree with the decision to terminate his prescription for Ultram, plaintiff does not explain how that disagreement with a decision in January 2011, eight months ago, now amounts to irreparable harm in the future.

September 20, 2011                    _s/Norah McCann King_
                                      Norah M<sup>c</sup>Cann King
                              United States Magistrate Judge